Gregory B. Collins (#023154)
KERCSMAR & FELTUS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
Telephone: (480) 421-1001
Facsimile:  (480) 421-1002
gbc@kflawaz.com

Kalman Magyar (*pro hac vice* to be filed)
MAGYAR, BOGLE & O'HARA LLP
300 International Drive, Suite 100
Williamsville, New York 14221
Telephone: (647) 300-6163
kalman@mbollp.com

*Attorneys for ThermoLife International, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| THERMOLIFE INTERNATIONAL, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MUSCLEPHARM CORPORATION, a Nevada corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br>(Patent Infringement)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ThermoLife International, LLC ("Plaintiff" or "ThermoLife") sets forth the following as its Complaint against Defendant MusclePharm Corporation ("Defendant" or "MusclePharm"):

**THE PARTIES**

1. Plaintiff ThermoLife International, LLC is a limited liability company organized and existing under the laws of Arizona, with a place of business at 1334 E.

Chandler Blvd in Phoenix, Arizona, 85048.  This action is brought by ThermoLife for infringement of a United States patent exclusively licensed by ThermoLife.

2. Defendant MusclePharm Corporation is a Nevada corporation with a place of business at 4721 Ironton St. # A in Denver, Colorado, 80239.

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

5. This Court has personal jurisdiction over Defendant.  By way of example and without limitation, Defendant, directly or through intermediaries (including distributors, retailers, and others), makes, manufactures, ships, distributes, advertises, markets, offers for sale, and/or sells dietary supplement products that infringe on one or more claims of the patent in suit (hereinafter the "accused products"), which include, but are not limited to, products sold under the "Amino-1," "Assault," "Creatine," "Ignite," "Iron-CRE3," and "Iron Pump" brand names, in the United States and the State of Arizona.

6. By way of further example and without limitation, Defendant has purposefully and voluntarily placed the accused products into the stream of commerce with the expectation that they will be purchased in the District of Arizona, and the products are actually purchased in the District of Arizona.

7. Venue is also proper in this Court because MusclePharm does business nationwide and it receives substantial compensation from sales in this District, and has damaged ThermoLife, which it knows has a place of business in this District.  In addition, MusclePharm knowingly engages in activities directed at competitors and consumers in this District.

# FACTS

8. ThermoLife is the exclusive licensee of U.S. Patent No. 9,180,140 ("the '140 Patent"), titled "Performance enhancing composition and use thereof," with all substantial rights in the patent, including the right to sue infringers such as Defendant.

9. The '140 Patent is also referred to herein as the "patent in suit."

10. The '140 Patent protects a method of administering nitrate or nitrite to humans in order to non-therapeutically cause a reduced oxygen uptake during exercise. Reducing oxygen uptake during exercise is highly beneficial for athletes and really anyone involved in physical activity. For this reason, and many others, nitrates have become an extremely popular ingredient for use in dietary supplements.

11. As explained further below, Defendant has infringed at least claims 1 and 25 of the '140 Patent.

12. Claim 1 of the '140 provides:

> A method for non-therapeutically reducing oxygen consumption ($VO_2$) of a mammal and enhancing physical performance of the mammal during physical exercise, the method comprising:
>
> orally administering inorganic nitrate and/or nitrite to said mammal up to three days prior to the mammal performing physical exercise and in a dose of about 0.01-10 mmol inorganic nitrate/kg bodyweight/day and/or of about 0.001-1 mmol inorganic nitrite/kg bodyweight/day; wherein administration of said inorganic nitrate and/or nitrite will result in reduced oxygen consumption ($VO_2$) in and enhanced physical performance of said mammal during the physical exercise as compared with the physical performance of said mammal during the physical exercise in the absence of administration of the inorganic nitrate and/or nitrite.

13. Claim 25 of the '140 Patent provides:

> A method for non-therapeutically reducing oxygen consumption (VO2) of a mammal and enhancing physical performance of the mammal during physical exercise, the method comprising:

orally administering inorganic nitrate and/or nitrite to said mammal in the dose of about 0.01-10 mmol inorganic nitrate/kg bodyweight/day or of about 0.001-1 mmol inorganic nitrite/kg bodyweight/day, and said mammal performing physical exercise, wherein said mammal exhibits reduced oxygen consumption (VO2) and enhanced physical performance during the physical exercise as compared with the physical performance of said mammal during the physical exercise in the absence of administration of the inorganic nitrate and/or nitrite.

14. Defendant has committed the tort of patent infringement within the District of Arizona by virtue of the fact that Defendant has formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold the accused products in this District, and continues to do so.

15. Defendant's products brand-named "Amino-1," "Assault," "Creatine," "Ignite," "Iron-CRE3," and "Iron Pump" all include inorganic nitrates. Defendant's consumers have taken, used, and orally administered each of the products listed.

16. Each the Defendant's products identified above, is formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and/or sold by Defendant to include ingredients for certain purposes that, because of their inclusion in the products for such purposes, infringe one or more claims of the patent in suit, and as a result, when end-users of Defendant's accused products orally administer the accused products, they are practicing the methods disclosed in those claims.

17. Defendant's advertisements for each of these products explains essential elements of one or more of the methods disclosed in the '140 Patent, and the products' labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods. As just one example, Defendant has advertised its Ignite product, which includes nitrates, by stating, "Nitrates have been found to enhance muscle efficiency (lower the oxygen cost of exercise) and extend time to exhaustion."

18. Defendant has therefore specifically intended to cause end-users to directly infringe the claimed methods of the '140 Patent, and has in fact urged them to do so.

4

19. As a result of the number of products at issue and the number of advertising statements that are relevant to the infringement analyses, to assist the Court, Plaintiff has prepared an infringement analysis chart for each of the products at issue. The Infringement Analyses are attached as Exhibits A through F hereto, and explicitly incorporated herein by reference.

20. As the Infringement Analyses demonstrate, end-users of Defendant's accused products are direct infringers of one or more claims of the patent in suit. 21.

The accused products are not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclose any uses for the products that do not infringe upon such methods.

22. The inclusion of inorganic nitrates in the products is material to practicing such methods.

23. Defendant has knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encourages, urges, and induces the accused products' end-users to purchase and orally administer the accused products to practice such methods, and has done so in the past.

24. Defendant has intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes of practicing the claimed methods, by having them orally ingest the compounds disclosed in such claims.

25. Defendant has knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of the patent in suit.

26. Defendant has direct, firsthand knowledge of the patent in suit, in that Plaintiff ThermoLife International, LLC provided written notice to Defendant in February 2016, through the law firm of Magyar, Bogle & O'Hara LLP to Defendant's counsel, detailing the alleged infringements for all products at issue (except for Iron Pump), which communication was ignored by Defendant. A copy of that communication is attached hereto as Exhibit G—its attachments are attached hereto as Exhibits H through L.

27. Defendant has brazenly and willfully decided to infringe the patent in suit despite knowledge of the patent's existence and its knowledge of the accused products' infringements of the patent.

28. Defendant has not ceased its own contributory infringement or inducement of infringement by end-users, despite its knowledge of the patent in suit and the end-users' infringing activities with respect to the patent in suit.

## FIRST CAUSE OF ACTION

### Infringement of U.S. Patent No. 9,180,140

29. Plaintiff repeats and re-alleges the allegations of the foregoing paragraphs of this Complaint as if fully set forth herein.

30. Defendant has in the past and still is literally infringing or infringing under the doctrine of equivalents one or more claims of the patent in suit by making, using, selling, and offering for sale the accused products, and will continue to do so unless enjoined by this Court.

31. End-users of Defendant's accused products are direct infringers of one or more claims of the patent in suit.

32. End-users of Defendant's accused products have taken, used, and orally administered the accused products.

33. The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include inorganic nitrates that, by virtue of their inclusion in the products as advertised and labeled, infringe one or more claims of the patent in suit.

34. The accused products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale, and sold by Defendant to include inorganic nitrates for purposes that, by their inclusion in the products for such purposes, infringe one or more claims of the patent in suit, and as a result, when end-users of Defendant's accused products orally administer the accused products, they are practicing the methods disclosed in one or more claims of that patent.

6

35. Such purposes include without limitation those set forth in the Infringement Analyses set forth herein as Exhibit A through F.

36. Defendant's labels and advertising for the accused products explain the elements and essential elements of the methods disclosed in the patent in suit, and those labels and advertising statements encourage, urge, and induce the accused products' end-users to purchase and orally ingest the products to practice those methods, and end-users do practice those methods.

37. Defendant has therefore specifically intended to cause these end-users to directly infringe the claimed methods of the patent in suit, and has in fact urged them to do so.

38. The accused products are not suitable for non-infringing uses, and none of Defendant's labels or advertisements for the accused products disclose any uses for the products, nor for the compounds disclosed in the claimed methods, that do not infringe upon such methods.

39. The inclusion of these specific infringing ingredients in the products is material to practicing such methods.

40. Defendant has knowledge that the accused products are especially adapted by end-users of the products for the practicing of such methods, and, indeed, Defendant encourages, urges, and induces the accused products' end-users to purchase and orally administer the accused products to practice such methods, and have done so in the past.

41. Defendant has intentionally and knowingly induced, encouraged, and urged end-users of the accused products to purchase and orally administer the accused products for the purposes disclosed in one or more claims of the patent in suit by having them orally ingest the compounds disclosed in such claims.

42. Defendant has knowledge of the fact that the accused products, particularly as administered, infringe on one or more claims of the patent in suit.

43. Defendant also has direct, firsthand knowledge of the patent in suit.

44. Defendant's activities have been without express or implied license by

Plaintiff or the owner of the patent in suit.

45. As a result of Defendant's acts of infringement, Plaintiff has suffered and will continue to suffer damages in an amount to be proved at trial.

46. As a result of Defendant's acts of infringement, Plaintiff has been and will continue to be irreparably harmed by Defendant's infringements, which will continue unless Defendant is enjoined by this Court.

44. Defendant's past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants an award of treble damages and attorneys' fees in accordance with 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment against Defendant as follows:

1. A declaration that Defendant has infringed the patent in suit, under 35 U.S.C. §§ 271 *et seq.*;

2. That preliminary and permanent injunctions be issued restraining Defendant, its officers, agents, servants, directors, and employees, and all persons in active concert or participation with each, from directly or indirectly infringing, or inducing or contributing to the infringement by others of, the patent in suit;

3. That Defendant be required to provide to Plaintiff an accounting of all gains, profits, and advantages derived by Defendant's infringement of the patent in suit, and that Plaintiff be awarded damages adequate to compensate Plaintiff for the wrongful infringing acts by Defendant, in accordance with 35 U.S.C. § 284;

4. That the damages awarded to Plaintiff with regard to the patent in suit be increased up to three times, in view of Defendant's willful infringement, in accordance with 35 U.S.C. § 284;

5. That this case be declared to be exceptional in favor of Plaintiff under 35 U.S.C. § 285, and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action;

6. That Plaintiff be awarded its interest and costs of suit incurred in this action;

7. That Plaintiff be awarded compensatory damages;

8. That Plaintiff be awarded pre-patent issuance damages;

9. That Plaintiff be awarded punitive damages; and

10. That Plaintiff be awarded such other and further relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED this 1st day of April, 2016.

Kercsmar & Feltus PLLC


By: s/Gregory Collins
Gregory B. Collins
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
*Attorneys for ThermoLife International, LLC*